```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
-----------------------------------------------------------x

DIVERSIFIED CARTING, INC., DIVERSIFIED
CONSTRUCTION CORP., and TROY CARUSO,

                    Plaintiffs,

             -against-

THE CITY OF NEW YORK; SEASONS CONTRACTING CORP.; TURNER CONSTRUCTION CORP.; THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY; THE NEW YORK STATE EMERGENCY MANAGEMENT OFFICE; THE FEDERAL EMERGENCY MANAGEMENT AGENCY; WORLD TRADE CENTER PROPERTIES LLC; SILVERSTEIN PROPERTIES, INC.; SILVERSTEIN WTC MANAGEMENT CO. LLC; WESTFIELD AMERICA TRUST WESTFIELD WTC LLC; WESTFIELD CORPORATION, INC.; WESTFIELD AMERICA, INC.; 7 WORLD TRADE CENTER CO.; MARRIOTT INTERNATIONAL, INC.; U.S. GENERAL SERVICES ADMINISTRATION; and "JOHN DOE" and "JANE DOE," *being fictitious names*,

                    Defendants.

-----------------------------------------------------------x

04 Civ. 9507 (HB)

<u>OPINION & ORDER</u>
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-15-05

**Hon. HAROLD BAER, JR., District Judge**[*]:

      On December 3, 2004, Plaintiffs, Diversified Carting, Inc., Diversified Construction Corporation and Troy Caruso (collectively, "Diversified"), filed the instant action against the above named defendants for, <u>inter</u> <u>alia</u>, breach of contract, unjust enrichment, quantum meruit, and breach of fiduciary duty. (Compl. ¶ 1).[1] Presently before this Court is a consolidated motion to dismiss and a motion for summary judgment. (Dckt. 82; 90.) For the foregoing reasons, the motion to dismiss is GRANTED in-part and DENIED in-part and the motion for summary judgment is DENIED.

---

[*] Margaret Johnson, a summer 2005 intern in my Chambers, and currently a second year law student at New York University School of Law, provided substantial assistance in the researching and drafting of this opinion.

[1] Pursuant to The Homeland Security Act of 2002, all functions, personnel, and liabilities of the Federal Emergency Management Agency have been transferred to the Secretary of the Department of Homeland Security. <u>See</u> 5 U.S.C. § 301 <u>et</u> <u>seq.</u>. Accordingly, the Court will deem the Complaint amended to substitute the Federal Emergency Management Agency with the Department of Homeland Security. The Clerk of the Court is directed to terminate the Federal Emergency Management Agency as Defendant, add the Department of Homeland Security as the new Defendant, and revise the caption of this action.

# I. BACKGROUND

## A. Factual Background

The World Trade Center was a "complex of seven commercial buildings" located in Lower Manhattan. (Compl. ¶ 24.) On September 11, 2001, the World Trade Center was destroyed as a result of a terrorist attack. As is now common knowledge, two planes were hijacked and flown into the Twin Towers of the World Trade Center, causing their collapse and the destruction of other buildings within the complex and a myriad of deaths and personal injuries.

According to Diversified, on or about September 11, 2001, it was retained to assist with the search, excavation, and clean-up efforts at the World Trade Center disaster site. (Compl. ¶ 30.) While Diversified acknowledges that its services were not retained through the typical competitive bid process and no written contract was ever executed, they alleged that they performed excavation and demolition, and provided equipment and trucking services from on or about September 11, 2001 through sometime in January 2002. (Compl. ¶¶ 28; 30-32; 34.) Consequently, Diversified billed for its work using "billing rates for time, material, trucking and equipment" which it has alleged were "fair [and] reasonable." (Compl. ¶¶ 31; 32.)

Diversified now alleges it has not been paid for the work it performed at Building 7 and filed the instant action to recover not less than $452,498.97 against a variety of public and private entities involved in the recovery and clean-up efforts at the World Trade Center following the September 11, 2001 terrorist attacks. (Compl. ¶¶ 1; 35.)

First, the Complaint asserts that the Federal Government, and in particular, the Federal Emergency Management Agency ("FEMA") and the U.S. General Services Administration (collectively, "the Federal Defendants") hired contractors, including Diversified, to assist in the search, excavation, and clean-up efforts at the World Trade Center. (Compl. ¶¶ 11; 21; 30.)[2]

Second, in addition to the Federal Defendants, the Complaint also includes several New York City and State agencies. (Compl. ¶ 8.) In particular, the Complaint alleges that the New York City Department of Design and Construction, the New York City Department of Transportation, and the New York City Office of Emergency Management (collectively, "the City Defendants"), and the New York State Emergency Management Office ("NYSEMO"), an agency of the State of New York, contracted with general contractors who, in turn, contracted

---

[2] U.S. General Services Administration was dismissed from the suit on April 18, 2005. (Dckt. 69.)

with Diversified. (Compl. ¶¶ 30; 33.) The Port Authority of New York and New Jersey ("the Port Authority"),[3] the owner of the World Trade Center, is another governmental entity sued in this lawsuit. (Compl. ¶¶ 9; 24.)

Third, beyond the governmental entities, the Complaint names the lessees of the World Trade Center, World Trade Center Properties LLC, Silverstein Properties, Inc., Silverstein WTC Management Co. LLC, and 7 World Trade Company, L.P. (collectively, "SRE"). (Compl. ¶¶ 12-14; 19; 25.) Other alleged lessees of the World Trade Center included in the instant action are Westfield America Trust, Westfield WTC LLC, Westfield Corporation, Inc., and Westfield America, Inc. (collectively, "Westfield"), which leased the retail space within the World Trade Center. (Compl. ¶¶ 15-18.) In addition, Marriott International, Inc.,[4] which either owned or leased the land and/or the building that housed the Marriott Hotel located at the World Trade Center, is a defendant. (Compl. ¶¶ 20; 26.)

Lastly, the Complaint names two contractors which allegedly served as the general contractors for the recovery and clean-up efforts at the World Trade Center, Turner Construction Corp. ("Turner") and Seasons Construction Corp. ("Seasons"). (Compl. ¶¶ 6; 7; 33.)

## B. Procedural History

Diversified filed the instant action on December 3, 2004. (Dckt. 1.) HMH filed a motion for summary judgment on May 9, 2005. (Dckt. 82.) On May 16, 2005, I issued an Order requiring defendants to file a single consolidated motion to dismiss. (Dckt. 89.) The Defendants had apparently not bothered to chat with one another about their proposed motions to dismiss, or if they had, felt their prose deserved separate and distinct study despite their overwhelming similarities. Subsequently, the Federal Defendants, the City Defendants, and SRE filed a consolidated motion to dismiss on June 6, 2005. (Dckt. 90.)

## II. MOTION TO DISMISS

### A. Motion to Dismiss

The Federal Defendants, the City Defendants, and SRE move to dismiss the Complaint. The Federal Defendants contend that this Court lacks subject matter jurisdiction because neither the Tucker Act, 28 U.S.C. §§ 1346, 1491, the Miller Act, 40 U.S.C. § 3131 et. seq., nor the Stafford Act, 42 U.S.C. § 5121 et. seq., waive federal sovereign immunity. Further, the Federal

---

[3] The Port Authority was dismissed from the suit on April 5, 2005. (Dckt. 56.)
[4] It is uncontested that Defendant Marriott International, Inc. is incorrectly named in the Complaint, and that the correct name is HMH WTC LLC (herein, "HMH").

3

Defendants argue that if this Court has subject matter jurisdiction, Diversified has failed to state a claim under the Miller Act. Similarly, the City Defendants maintain that Diversified's Second and Ninth Causes of Action improperly seek recovery under the Miller Act and the Stafford Act. The City Defendants and SRE also challenge the sufficiency of the pleadings.

### 1. Subject Matter Jurisdiction

The Federal Defendants move to dismiss the Complaint for lack of subject matter jurisdiction in accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"). Pursuant to Rule 12(b)(1), this Court must accept all of the facts alleged in the Complaint as true and "draw all reasonable references in favor of the plaintiff." Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004). In any analysis of such a motion, "the plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction exists," Chayoon v. Chao, 355 F.3d 141, 143 (2d Cir. 2004) (citing Garcia v. Akwesasne Hous. Auth., 268 F.3d 76, 84 (2d Cir. 2001)), and jurisdiction must be "affirmatively" demonstrated. APWU et. al. v. Potter, 343 F.3d 619, 623 (2d Cir. 2003). Dismissal of the Complaint is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Raila, 355 F.3d at 119.

Subject matter jurisdiction is, of course, essential for Plaintiff to proceed, and to establish it here, a plaintiff must "demonstrate a specific statutory waiver of sovereign immunity." Lawson v. Fed. Emergency Mgmt. Agency, No. 03 Civ. 881, 2003 WL 2006600, at *2 (S.D.N.Y. Apr. 30, 2003), aff'd, 104 Fed. Appx. 216 (2d Cir. 2004). Absent such consent or statutory waiver, the United States is immune from suit and this Court lacks subject matter jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980) (citation omitted); Spinale v. United States, No. 03 Civ. 1704, 2004 WL 50873, at *6 (S.D.N.Y. Jan. 9, 2004) (holding that if the United States "has not waived its sovereign immunity, or if the conditions under which the United States has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist").

Diversified relies on three statutes to establish subject matter jurisdiction: (1) the Tucker Act, (2) the Miller Act, and (3) the Stafford Act.

#### a. *Tucker Act*

The Tucker Act "provides a comprehensive system for commencing actions against the United States as an entity." Coleman v. Nolan, 693 F. Supp. 1544, 1548 n.3 (S.D.N.Y. 1988)

(internal quotations omitted). In particular, the Tucker Act waives sovereign immunity and provides subject matter jurisdiction for non-tort claims against the United States "founded either upon the Constitution, or any act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States." C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co., 903 F.2d 114, 119 (2d Cir. 1990) (quoting 28 U.S.C. § 1346(a)(2)). However, the Tucker Act "is solely jurisdictional" and "does not create a substantive right to money damages." Cheminova A/S v. Griffin L.L.C., 182 F. Supp. 2d 68, 75 (D.D.C. 2002) (citing United States v. Mitchell, 463 U.S. 206, 216-17 (1983) (emphasis added).

Under Tucker, and in order to prevail here, Diversified must demonstrate more. The Tucker Act, without an independent waiver of sovereign immunity, does not provide the Court with subject matter jurisdiction over the Federal Defendants.

b. *Stafford Act*

The Stafford Act, also known as the Disaster Relief Act of 1974, was enacted to provide federal assistance to states in times of disasters. See 42 U.S.C. § 5121 et seq. While the Stafford Act empowers the President to order FEMA, inter alia, to clear debris, FEMA's activities are not entitled to sovereign immunity unless they were "based upon the exercise or performance of . . . a discretionary function or duty." Dureiko v. United States, 209 F.3d 1345, 1351 (Fed. Cir. 2000) (quoting 42 U.S.C. § 5148). To determine whether FEMA's activities were discretionary, and entitled to sovereign immunity, the Federal Circuit has articulated a two-prong test:

> (1) whether the act involves an element of judgment or choice; and
> (2) if so, whether that judgment is of the kind that the discretionary function exception was designed to shield.

Dureiko, 209 F.3d at 1351.[5] Under the first prong of the test, an act does not involve judgment or choice, and FEMA can be sued as they are here, if "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)); see also Graham v. Fed. Emergency Mgmt. Agency, 149 F.3d 997, 1006 (9th Cir. 1998). Conversely, if FEMA's decision was discretionary, the analysis continues to the second prong of the Dureiko test. See, e.g., Dureiko, 209 F.3d at 1351. Under the second prong of the test, FEMA is entitled to sovereign immunity if its actions and

---

[5] See Graham v. Fed. Emergency Mgmt. Agency, 149 F.3d 997, 1006 (9th Cir. 1998); Rosas v. Brock, 826 F.2d 1004, 1009 (11th Cir. 1987). The Dureiko test was adopted in United Power Assoc. v. Fed. Emergency Mgmt. Agency, No. 99 Civ. 180, 2000 WL 33339635, at *2 (D.N.D. Sept. 13, 2000); see also 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Pract. & Proc. § 3658.1 (3d ed. 1998).

5

decisions were "based on considerations of public policy." Id. (citation omitted); see also Rosas v. Brock, 826 F.2d 1004, 1009 (11th Cir. 1987). The Federal Circuit reasoned that Congress could not have intended that this exception would:

> [A]llow government agencies like FEMA to voluntarily contract with other parties in the course of providing disaster relief assistance, reap the benefits of such contracts but refuse to perform under them, and then claim immunity from liability resulting from its non-performance.

Dureiko, 209 F.3d at 1353-4.

This two-prong analysis was fashioned by the Federal Circuit to resolve a contractual dispute arising from a mobile home park damaged by Hurricane Andrew. Id., at 1348. In the aftermath of the federally declared disaster, FEMA was enlisted to oversee the recovery and reconstruction efforts of the disaster area. Id. As part of the recovery efforts, FEMA allegedly entered into a contract with the plaintiff whereby FEMA would clear debris from the mobile home park in exchange for permission to house displaced hurricane victims in the mobile home park. Id. Plaintiff alleged that FEMA failed to remove the debris in the agreed upon manner and subsequently sued FEMA for, inter alia, breach of contract. Id. at 1350. FEMA maintained that sovereign immunity shielded it from liability and moved to dismiss, claiming that the district court lacked subject matter jurisdiction. Id. The district court agreed and granted the motion. Id. at 1353. On appeal, the Federal Circuit rejected FEMA's contention, and held that once FEMA entered into the contract, its acts were no longer discretionary but, rather, mandatory. Id. According to the Federal Circuit, a contract is "indistinguishable from a federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow." Id. As such, the Federal Circuit reversed and remanded the case. Id. at 1360.

Here, the Federal Defendants' contention that Diversified's Second Cause of Action for breach of contract pursuant to the Stafford Act does not provide a waiver of sovereign immunity is belied not merely by a contractual arrangement but, by the President's National Emergency Order:

> A national emergency exists by reasons of the terrorist attacks at the World Trade Center . . . and the continuing and immediate threat of further attacks on the United States. Now, therefore, . . . George W. Bush, President of the United States of America, by virtue of the authority vested in me as President by the Constitution and the laws of the United States, . . . hereby declare that the national emergency has existed since September 11, 2001.

Proclamation No. 7463, 66 Fed. Reg. 48199 (Sept. 14, 2001). In the aftermath of the September 11, 2001 attacks, the President directed FEMA to coordinate disaster relief efforts pursuant to the Stafford Act:

> I have determined that the damage in certain areas of the State of New York, resulting from fires and explosions on September 11, 2001, is of sufficient severity and magnitude to warrant a major disaster declaration under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

66 Fed. Reg. 48682-01 (Sept. 21, 2001). In the weeks following the disaster, President Bush amended his initial order to ensure that FEMA would pay one hundred percent of all costs for debris removal at the World Trade Center site:

> I amend my major disaster declaration of September 11, 2001, to provide that the Federal Emergency Management Agency (FEMA) may reimburse 100 percent of total eligible costs for all Categories under Public Assistance.

66 Fed. Reg. 49674-02 (Sept. 28, 2001).[6] As a Presidential Order has the force of law, Acevedo v. Nassau County, N.Y., 500 F.2d 1078, 1084 n.7 (2d Cir. 1974), under the first prong of the Dureiko test, President Bush's Order that FEMA would pay for all debris removal costs was mandatory and to be strictly adhered to by FEMA. FEMA lacked discretion as to whether it was obligated to pay for the clean-up and recovery efforts at the World Trade Center. Therefore, the

---

[6] Two further amendments followed. See 66 Fed. Reg. 51435-01 (Oct. 9, 2001); 66 Fed. Reg. 52407-02 (Oct. 15, 2001). While the Amended Order states that FEMA "may" reimburse 100 percent of total eligible costs, both the White House and FEMA interpreted this order as mandatory, not discretionary. See Press Release, White House, Pres. Auth. Add. Disaster Fund. for N.Y. (Sept. 18, 2001) (http://www.whitehouse.gov/news/releases/2001/09/20010918-6.html) (last visited Aug. 10, 2005) ("The President's major disaster declaration . . . initially directed the Federal government to pay 75 percent of the eligible costs . . . . Under the President's [Amended Order], the Federal share has now been increased to 100 percent for these programs."); Press Release, FEMA, Pres. Auth. 100 Percent Funding For N.Y. Public Assist. Grants (Sept. 18, 2001) (http://www.fema.gov/news/newsrelease.fema?id=5672) (last visited Aug. 10, 2005) ("Under the President's Order today, [FEMA's Director] said the federal government will now pay 100 percent of those costs retroactive to September 11, the date of the President's declaration.") Thus, the Amended Order requires that FEMA pay 100 percent of such costs, rather than simply giving FEMA the option to do so.

decision to pay Diversified pursuant to the alleged contract does not "involve[] an element of judgment or choice." Dureiko, 209 F.3d at 1351.

As the discretionary function exception to the Stafford Act's waiver of sovereign immunity does not apply, the Federal Defendants are not immune from this lawsuit. Dureiko, 209 F.3d at 1353. The Stafford Act, once the two-prong test is met, contains the independent waiver of sovereign immunity and provides this Court with subject matter jurisdiction over the Federal Defendants. Therefore, the Federal Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.[7]

### 2. Failure to State a Cause of Action

The Federal Defendants also contend that even if I find subject matter jurisdiction, the Complaint fails to adequately allege a Miller Act claim. The City Defendants join this portion of the Federal Defendants' motion and maintain that Diversified's Ninth Cause of Action fails to state a cognizable claim under the Miller Act. In addition, the City Defendants argue that the Stafford Act does not include a right of recovery against a local municipality.

This branch of the motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. That rule requires the Court to construe all factual allegations in the Complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47-8 (2d Cir. 2002). The Court's consideration is limited to facts stated on the face of the Complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken. See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). The Complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957)).

### a. *Miller Act*

The Ninth Cause of Action against the Federal Defendants, the City Defendants, NYSEMO, Turner, and Seasons, is for violation of the Miller Act, in particular, the bond requirements. (Compl. ¶¶ 81-85.)

---

[7] As this Court has subject matter jurisdiction over the Federal Defendants pursuant to the Stafford Act, this Court will not address the Federal Defendant's argument that the Miller Act does not provide a waiver of sovereign immunity. See C.H. Sanders Co., Inc., 903 F.2d at 120.

The Miller Act was enacted by Congress in 1935 to protect subcontractors who work on government building projects. See Active Fire Sprinkler Corp. v. United States Postal Serv., 811 F.2d 747, 749 n.1 (2d Cir. 1987). The provisions of the Miller Act are "only applicable where the work in question was contracted for by the United States, or one of its agents or agencies." United States ex rel. Polied Envtl. Serv., Inc. v. Incor Group, Inc., No. 3 Civ. 1254, 2003 WL 1797846, at *1 (D. Conn. Apr. 4, 2003). The Miller Act requires, inter alia, that general contractors on government building projects post a payment bond "for the protection of all persons who supply labor or materials for the project." Active Fire Sprinkler Corp., 811 F.2d at 749.

The Miller Act also explicitly provides subcontractors with "the right to sue on the surety bond posted by the prime contractor," Dep't. of the Army v. Blue Fox, Inc., 525 U.S. 255, 264 (1999), but "does not expressly create a substantive right on behalf of a subcontractor to directly sue the United States, for compensation owed to him by the prime contractor." 4-Star Constr. Corp. v. United States, 6 Cl. Ct. 271, 273 (Cl. Ct. 1984) (emphasis in original); see also United States ex rel. Fred's Plumbing & Heating, Inc. v. Small Bus. Admin., 807 F. Supp. 675, 678 (D. Colo. 1992) ("the [Miller] Act creates no affirmative rights against the government"). As such, "a subcontractor's sole remedy is to institute a suit against the governmental contractor . . . or the surety, in the name of the United States." 4-Star Constr. Corp., 6 Cl. Ct. at 273; 40 U.S.C. § 3133.

According to Diversified, in the wake of September 11, 2001, the President suspended the Miller Act's surety bond requirement, "agreed to act as surety," and "guarant[eed] all payments for work to be done." (Pl. Consol. Op. to Def. Mot. to Dismiss, at 20.). As such, Diversified argues, the Miller Act claim raises numerous questions of fact that require discovery. Unfortunately for Diversified, their claims are contradicted by the plain language of the Miller Act and their Ninth Cause of Action must be dismissed as a matter of law against the Federal Defendants and the City Defendants.

Pursuant to Section 3147 of the Miller Act, "the President may suspend the provisions of this subchapter during a national emergency," 40 U.S.C.A. § 3147, but the provisions pertain solely to wages. See 40 U.S.C. §§ 3141, 3142, 3143, 3144, 3145, 3146. The President's authority to suspend the Miller Act is expressly limited to Section 3147 and the suspension is limited to wages. Section 3133, which contains the bond requirements, is located in Subchapter

III, entitled "Bonds." As such, the President's Order regarding debris removal, made pursuant to the Stafford Act, cannot be construed as having suspended the bond requirements of the Miller Act and, as the Federal Defendants were neither the surety nor the government contractor, Diversified cannot recover from them.

Similarly, the City Defendants were neither the surety nor the government contractor. See 4-Star Constr. Corp., 6 Cl. Ct. at 273; 40 U.S.C. § 3133. Assuming arguendo, that the City Defendants acted as an agent or agency of the federal government and contracted with Diversified for the work at the World Trade Center (see Compl. ¶¶ 30; 32; 33), again, Diversified cannot recover against the City because the Miller Act does not provide a private right of recovery from the federal government or its agents/agencies. See Dep't. of the Army, 525 U.S. at 264. In addition, Diversified does not allege that the City Defendants were general contractors. Thus, as the Complaint does not allege that the City Defendants were either government contractors or the surety, Diversified does not have a cognizable Miller Act claim against the City Defendants.

Accordingly, the Federal Defendants' and the City Defendants' motion to dismiss the Ninth Cause of Action for violation of the Miller Act, in particular, the bond requirements, is GRANTED. It is important to note, however, that at this stage of the proceedings, Diversified's Miller Act claims against Turner and Seasons remain viable.

      b.    *Stafford Act/City Defendants*

As previously mentioned, Diversified's Second Cause of Action is for breach of contract. (Compl. ¶¶ 39-45.) According to the City Defendants, Diversified cannot recover damages for breach of contract under the Stafford Act against the non-federal government defendants, e.g., New York City and State governments and their respective agencies.

The Stafford Act authorizes the President to order the clearing of debris which results from a major disaster, through use of federal agencies, 42 U.S.C.A. § 5173(a)(1), and addresses the ability to recover for, inter alia, breach of contract or disaster relief, from the federal government. 42 U.S.C. § 5148. However, the Stafford Act does not provide an explicit right of recovery from a non-federal government entity. See 42 U.S.C. § 5148. As such, where a statute does not explicitly confer a right to recover, I must determine whether "an implied right of action is implicit." Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., 286 F.3d 613, 619 (2d Cir. 2002). The Supreme Court articulated four factors to consider in this determination:

> (1) legislative intent, (2) the consistency of the remedy with the underlying purposes of the legislative scheme, (3) whether the plaintiff was a member of the class for whose benefit that statute was enacted, and (4) whether the cause of action is one traditionally relegated to state law.

Id. (citing Cort v. Ash, 422 U.S. 66, 78 (1975)). Legislative intent is the main factor to be considered, while the other three are reviewed "only as possible indicia for legislative intent." Hallwood Realty Partners, L.P., 286 F.3d at 619 n.7; see also County of Westchester v. N.Y., 286 F.3d 150, 152 (2nd Cir. 2002). A determination of the legislative intent is "a matter of statutory interpretation" and a court must first look to the statute's text and structure. Olmsted v. Pruco Life Ins. Co. of N.J., 283 F.3d 429, 432 (2d Cir. 2002).

Stafford Act claims are typically brought following national disasters such as hurricanes, Hawaii ex rel. Attorney Gen. v. Fed. Emergency Mgmt. Agency, 294 F.3d 1152 (9th Cir. 2002), typhoons, Graham v. Fed. Emergency Mgmt. Agency, 149 F.3d 997 (9th Cir. 1998), severe freezes, Rosas v. Brock, 826 F.2d 1004 (11th Cir. 1987), floods, United Power Ass'n v. Fed. Emergency Mgmt. Agency, No. 99 Civ. 180, 2001 WL 1789404, at *1 (D.N.D. Aug. 14, 2001) and, droughts, Ornellas v. United States, 2 Cl. Ct. 378 (Cl. Ct. 1983). In general, the actions are filed against FEMA and challenge FEMA's decision, for instance, to deny disaster relief to a particular party.[8]

This is not the first time a court in this Circuit has been asked to determine whether the Stafford Act includes an implied right of action. In State of New York v. O'Hara, the state filed an action for breach of contract and fraud against defendants who were performing remedial work at Love Canal. 595 F. Supp. 1101 (W.D.N.Y. 1984). Defendants, as they do here, moved to dismiss the Stafford Act claim and argued that the statute did not confer a right of recovery upon the plaintiff. Id. The district court agreed. Id. at 1103. Applying the Cort factors to the Stafford Act, the district court reasoned that there was a noticeable sound of silence, both in the statute and in the legislative history, as to Congress's intent to create a right of recovery from non-federal government entities and, indeed, there was "some indication that Congress meant not to provide a [private] right of action." Id. at 1102 (emphasis in original). The district court

---

[8] For example, in City of San Bruno v. Fed. Emergency Mgmt. Agency, the city applied for relief under FEMA's public assistance program after El Nino caused a hillside to collapse. 181 F. Supp. 2d 1010, 1011 (N.D.Ca. 2001). FEMA determined that the City was not eligible for funding and rejected the application. Id. at 1012. The City subsequently filed suit. Id. at 1011. The court determined it lacked subject matter jurisdiction as FEMA's decision to deny public assistance was discretionary. Id. at 1013.

concluded that because the case did "not involve a statute which deal[t] with an area of law in which a private right of action has been traditionally recognized by courts," such silence should be viewed as "legislative acquiescence with existing case law," and, that no private right of action existed under the Stafford Act Id. at 1103.

Here, Diversified, a subcontractor, sued the City Defendants, in addition to FEMA, under the Stafford Act. (Compl. ¶¶ 39-45.) In addition to the legislative history discussed in O'Hara, the legislative history accompanying President Bush's Order indicates that the House of Representatives understood the uniqueness of the events of September 11, 2001 and that FEMA was to be the lead agency in providing disaster relief.[9] There is no indication in either the Stafford Act's legislative history, O'Hara, 595 F. Supp. at 1102, or President Bush's Order, suggesting that local government entities were to be in charge of federal disaster relief.[10] In addition, as the court in O'Hara recognized, breach of contract is an area of law traditionally relegated to state common law. Indeed, a subcontractor, such as Diversified, was not the intended beneficiary of the Stafford Act, a statute designed to give aid to states after disasters.

For the foregoing reasons, Diversified does not have an express or an implied right of recovery against non-federal government entities pursuant to the Stafford Act. Thus, the City Defendants' motion to dismiss Diversified's Second Cause of Action as against the City Defendants is GRANTED.

3. **Pleadings**

The City Defendants and SRE contend that the Complaint fails to state a cause of action separate and apart from Diversified's Second Cause of Action for breach of contract pursuant to the Stafford Act and the Ninth Cause of Action for violation of the Miller Act. In particular, SRE argues that the pleadings fail to (1) specifically reference SRE, or (2) adequately allege a breach of contract claim. In addition, both the City Defendants and SRE maintain that Diversified cannot plead equitable doctrine claims in the alternative to breach of contract claims.

---

[9] "The Nation on September 11th faced the most horrific disaster ever to occur in America, a disaster of unprecedented scope. . . . FEMA has risen to the challenge and the Committee commends the agency for its response." H.R. Rep. No. 107-480, at 57 (2002).

[10] See e.g. H.R. Rep. No. 107-480, at 57 (2002); see also Press Release, White House, Pres. Auth. Add. Disaster Fund. for N.Y. (Sept. 18, 2001) (http://www.whitehouse.gov/news/releases/2001/09/ 20010918-6.html) (last visited Aug. 11, 2005); Press Release, FEMA, Pres. Auth. 100 Percent Funding For N.Y. Public Assist. Grants (Sept. 18, 2001) (http://www.fema.gov/news/newsrelease.fema?id=5672) (last visited Aug. 11, 2005).

12

### a. *Claims Against SRE*

SRE is implicated in the First Cause of Action for declaratory relief (Compl. ¶¶ 36-38), the Third Cause of Action for breach of contract (Compl. ¶¶ 46-51), the Fifth Cause of Action for restitution (Compl. ¶¶ 59-66), the Sixth Cause of Action for unjust enrichment (Compl. ¶¶ 67-71), and the Seventh Cause of Action for quantum meruit. (Compl. ¶¶ 72-76.) SRE maintains that Diversified's pleadings fail to state any cause of action because the Complaint fails to refer specifically to SRE but instead groups SRE together with other defendants. In addition, according to SRE, Diversified has failed to allege sufficiently the necessary elements of breach of contract. Poppycock.

In breach of contract claims, the claimant need only include "short and plain statements of the case." See Power Travel Int'l, Inc. v. Am. Airlines, Inc. 257 F. Supp. 2d 701, 703 (S.D.N.Y. 2003) (holding that Rule 8 "requires only short and plain statements of the case when pleading a breach of contract claim"). Under New York Law, a viable claim for breach of contract "need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendants, and (4) damages." Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (citing Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)); see also Valjean Mfg. Inc. v. Michael Wediger, Inc., No. 03 Civ. 6185, 2005 WL 356799, at *14 (S.D.N.Y. Feb. 14, 2005) (Baer, J.).

Here, SRE are named defendants in the instant action. (Compl. ¶¶ 13; 14). In stating the breach of contract claim against all Defendants, the Complaint states that it "repeats and re-alleges paragraphs marked and numbered '1' through '45' as if fully and at length set forth herein," incorporating all of the previous factual allegations made in the Complaint. (Compl. ¶ 46.) Consequently, the section of the Complaint which refers specifically to SRE (Compl. ¶ 25) is considered a part of the pleadings for the breach of contract claim against all defendants. (Compl. ¶¶ 46-51.) By such incorporation, Diversified has sufficiently met the notification requirement of Rule 8.

As SRE is clearly designated, let's turn to the adequacy of the pleadings with respect to the elements of a breach of contract claim. The Complaint alleges each of these necessary elements. First, an agreement allegedly exists between SRE and Diversified ("Seasons and/or Turner, and the other defendants, agreed to pay Diversified for its work"). (Compl. ¶¶ 47; 49.)

13

Second, Diversified allegedly adequately performed the contract, specifically the debris removal ("Diversified fully performed its demolition and debris removal."). (Compl. ¶ 50.) Third, SRE allegedly breached the contract in that it refused to pay Diversified ("Defendants have refused to fully pay Diversified"). (Compl. ¶ 50.) Fourth, and last, Diversified was allegedly damaged by the breach, in the amount of $452,498.97. (Compl. ¶ 51).

Construing Diversified's allegations liberally, and pending discovery, Diversified, at this stage of the proceeding, has adequately pled the required elements of a breach of contract claim. See Xpedior Credit Trust, 341 F. Supp. 2d at 271. Accordingly, SRE's motion to dismiss the Third Cause of Action for breach of contract is DENIED.

### b. *Quantum Meruit, Restitution, and Unjust Enrichment*

Diversified's Fifth, Sixth, and Seventh Causes of Action, respectively, also contend that if no valid contract with the City Defendants and/or SRE exists, then it is entitled to recover under the equitable doctrines of quantum meruit, restitution, and unjust enrichment. (Compl. ¶¶ 59-76.)

Quantum meruit is "a doctrine of quasi contract" and New York law requires a claimant to establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they were rendered, (3) an expectation of compensation therefore, and (4) the reasonable value of the services." Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994); see also Bauman Assoc., Inc. v. H & M Int'l Transp., Inc., 567 N.Y.S.2d 404, 408 (1st Dep't 1991). Similarly, a party can recover under a theory of unjust enrichment if no valid contract exists between the parties. See In re First Cent. Fin. Corp., 377 F.3d 209, 213 (2d Cir. 2004). To prevail, a claimant must establish: "(1) that the defendant benefited, (2) at the plaintiff's expense and (3) that equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000); see also Valjean Mfg., No. 03 Civ. 6185, 2005 WL 356799, at *17 ("[T]o establish a claim for unjust enrichment, a claimant must demonstrate defendant's enrichment at claimant's expense and that equity and good conscience militate against permitting defendant to retain what [the claimant] is seeking to recover.") (Baer, J.). As for restitution, it is available "where there has been a showing of unjust enrichment." Brown v. Sandimo Materials, 250 F.3d 120, 126 (2d Cir. 2001).

The City Defendants and SRE's contentions that recovery under (1) a claim of quantum meruit, (2) restitution, and (3) unjust enrichment are not available because of the alleged contract

between Diversified and Seasons. At this stage of the proceedings, I cannot address and should not resolve the issue as to whether an express agreement did in fact exist. Even if an express contract existed, it is well settled that a plaintiff is permitted to plead in the alternative. Fed. R. Civ. P. 8(e)(2) ("a party may set forth two or more statements of a claim or defense alternately or hypothetically"); see also Aetna Cas. and Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 585 (2d Cir. 2005). A party may bring a quantum meruit or unjust enrichment claim on its own, without a breach of contract claim. See Aniero Concrete Co., Inc. v. N.Y.C. Constr. Auth., No. 94 Civ. 3506, 2000 WL 863208, at *1 (S.D.N.Y. June 27, 2000).

The Complaint sufficiently alleges a claim in quantum meruit. Diversified alleges that it performed services in good faith (Compl. ¶ 73), that the defendants allegedly accepted the services ("after accepting such work, materials, and equipment defendants . . .") (Compl. ¶ 75), that Diversified expected payment for the services (Compl. ¶ 76.), and, finally, Diversified pled a value for the services which is reasonable. (Compl. ¶¶ 32; 74.)

Similarly, the Complaint sufficiently alleges viable unjust enrichment claims. First, the defendants allegedly benefited from Diversified's work ("the defendants derived substantial benefits due to Diversified's performance.") (Compl. ¶ 69.) Second, the work was allegedly conducted at Diversified's expense ("Diversified contributed large amounts of time, materials and equipment, and suffered equipment damage, to clear debris"). (Compl. ¶ 68.) Finally, the Complaint alleges that equity and good conscience requires restitution ("it is against all notions of equity and justice for the Defendants to retain the benefit of Diversified's work at Site without compensating Diversified"). (Compl. ¶ 65.) As such, Diversified has adequately pled the elements of an unjust enrichment claim against the City Defendants and SRE.

Accordingly, at this stage in the proceedings and pending discovery, the City Defendants and SRE's motion to dismiss Diversified's Fifth, Sixth, and Seventh Causes of Action is DENIED.

### 4. Fiduciary Duty Pursuant to New York Lien Law

Diversified's Eighth Cause of Action is for breach of fiduciary duty against the Federal Defendants, the City Defendants, NYSEMO, Turner and Seasons. (Compl. ¶¶ 77-80.) The City Defendants argue that no fiduciary duty exists pursuant to New York Lien Law.

While Rule 8 of the Federal Rules of Civil Procedure requires minimal pleading, the Complaint's references to the New York Lien Law fails to satisfy even the most liberal pleading requirements, i.e., Diversified fails to point to any specific violation. (Compl. ¶ 78.).

As the World Trade Center was not owned or operated by the City Defendants and the Complaint does not allege that the City Defendants became the effective owners or operators of the site (Compl. ¶¶ 24-26), Diversified cannot establish a duty under § 3 of the Lien Law. Similarly, the Complaint does not allege that the City Defendants were the general contractor or a subcontractor nor does it establish a fiduciary duty under § 5 or § 70.

Accordingly, the City Defendants' motion to dismiss Diversified's Eighth Cause of Action for breach of fiduciary duty claim is GRANTED.

### 5. Pendant State Law Claims

Finally, Diversified's Tenth Cause of Action is for breach of covenant of good faith and fair dealing (Compl. ¶¶ 86-89), and the Eleventh Cause of Action is for constructive trust/trustee ex maleficio. (Compl. ¶¶ 90-103.) The City Defendants argue these state law claims should be dismissed for lack of jurisdiction.

Supplemental jurisdiction can be extended to state law claims in district court where the state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367; see also Jones v. Ford Motor Credit Co., 358 F.3d 205, 212 (2d Cir. 2004). "A state law claim forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact." Briarpatch Ltd. L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (citing Cicio v. Does, 321 F.3d 83, 97 (2d Cir. 2003)). Where a state claim is part of the same case or controversy as a sustained federal claim, the exercise of supplemental jurisdiction is within the discretion of a district court. First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004).

This Court has original jurisdiction over Diversified's federal claim against the Federal Defendants under the Stafford Act. The remaining state law claims arise from the very same work that is the subject of the federal claims. See Polygram Merch., Inc. v. N.Y. Wholesale Co., No. 97 Civ. 6489, 1999 WL 4957, at *3 (S.D.N.Y. Jan. 6, 1999) (Baer, J.). The common nucleus is the search, excavation, and clean-up efforts at the World Trade Center site. The absence of any material differences of fact, which distinguish the federal claims, make a single adjudication

appropriate. Indeed, the allegations in the Complaint center around a "constantly evolving project" (Compl. ¶ 31), thus the federal law claims and the state law claims stem from a "common nucleus of operative facts." See Briarpatch Ltd. L.P., 373 F.3d at 308.

Accordingly, for now, this Court will extend supplemental jurisdiction to Diversified's other state law claims against the City Defendants and the City Defendant's motion to deny supplemental jurisdiction and dismiss the Tenth Cause of Action for breach of covenant of good faith and fair dealing and the Eleventh Cause of Action for constructive trust/trustee ex maleficio is DENIED.

### III. MOTION FOR SUMMARY JUDGMENT

As for HMH's motion for summary judgment, it is, in my view and at this juncture, not only far fetched but a waste of the client's money. Summary judgment is only available where a court determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law, Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986), it is rarely granted before discovery. Here, there are genuine issues of material facts which cannot be decided as a matter of law, to name a few (1) whether an agreement between HMH and Diversified exists; (2) whether Turner, Seasons, and the City Defendants had the ability to bind HMH to agreements made with Diversified; (3) whether Diversified had dealings with HMH, its property, or anyone acting on behalf of HMH; (4) whether the City of New York or the Port Authority assumed control of the World Trade Center site after the terrorist attacks; and, (5) whether HMH, or a party acting on its behalf, was involved in decisions regarding debris removal at the World Trade Center site.

Accordingly, HMH's motion for summary judgment is DENIED.

### IV. CONCLUSION

For the reasons set forth above, the Defendant's motion to dismiss is GRANTED in-part and DENIED in-part; and, it is hereby

ORDERED, that the Federal Defendants' motion to dismiss the Second Cause of Action for breach of contract pursuant to the Stafford Act is DENIED; and, it is further

ORDERED, that the City Defendants' motion to dismiss the Second Cause of Action for breach of contract pursuant to the Stafford Act is GRANTED and the Second Cause of Action is DISMISSED as against the City Defendants; and, it is further

ORDERED, that SRE's motion to dismiss the Third Cause of Action for breach of contract is DENIED; and, it is further

ORDERED, that the City Defendants' and SRE's motion to dismiss the Fifth Cause of Action for restitution, the Sixth Cause of Action for unjust enrichment, and the Seventh Cause of Action for quantum meruit is DENIED; and, it is further

ORDERED, that the City Defendants' motion to dismiss the Eighth Cause of Action for breach of fiduciary duty is GRANTED and the Eighth Cause of Action is hereby DISMISSED in its entirety; and, it is further

ORDERED, that the Federal Defendants' and the City Defendants' motion to dismiss the Ninth Cause of Action for violation of the Miller Act is GRANTED and the Ninth Cause of Action is DISMISSED against the Federal Defendants and the City Defendants; and, it is further

ORDERED, that the City Defendants' motion to deny supplemental jurisdiction and dismiss the Tenth Cause of Action for breach of covenant of good faith and fair dealing, and the Eleventh Cause of Action for constructive trust/trustee ex malificio is DENIED; and, it is further

ORDERED that HMH's motion for summary judgment is DENIED; and it is further

ORDERED that (1) Movants, or group of Movants, are to file only <u>one</u> consolidated motion for summary judgment, if any, on or before October 11, 2005; (2) Respondent, or group of Respondents, are to file only <u>one</u> consolidated response to Movants motion for summary judgment, if any, on or before October 31, 2005; (3) Movants, or group of Movants, are to file only <u>one</u> consolidated reply brief in support of their motion for summary judgment, if any, on or before November 15, 2005; (4) Movants, or group of Movants, are to deliver the fully briefed motion for summary judgment, if any, to Chambers on or before November 16, 2005 at 10.00 a.m.; and, (5) if Movant or Respondent desires oral arguments on the motion for summary judgment to notify the Court in writing on or before November 16, 2005 at 10.00 a.m.; and, it is further

ORDERED that the Clerk of the Court is instructed to close this and any other open motions and remove these open motions from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**August 15, 2005**

_____
U.S.D.J.